UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **CHRISTINA FERRARI,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**MOXIE PEST CONTROL - DENVER, LLC**, a Colorado company, and **MOXIE PEST CONTROL LP**, a Texas company,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Christina Ferrari ("Plaintiff Ferrari" or "Ferrari") brings this Class Action Complaint and Demand for Jury Trial against Defendant Moxie Pest Control - Denver, LLC ("Defendant Moxie Denver" or "Moxie Denver") and Defendant Moxie Pest Control LP ("Defendant Moxie Corp" or "Moxie Corp") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls and sending text messages to consumers without consent including calls and texts to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff Ferrari, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.      Plaintiff Ferrari is a Colorado resident who currently resides in Tucson, Arizona where a number of the calls and texts were received.

1

2.      Defendant Moxie Pest Control - Denver, LLC is registered in Colorado, with its headquarters based in Sheridan, Colorado.

3.      Defendant Moxie Pest Control LP is registered in Texas, with its headquarters based in Irving, Texas.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over the Defendants because Defendant Moxie Denver is headquartered in and transacts business in and from this District. Defendant Moxie Corp also transacts business in this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Moxie Denver has its headquarters in this District and part of the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

7.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

8.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

2

9.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11.      According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in August 2024 alone, at a rate of 143.8 million per day. www.robocallindex.com (last visited September 11, 2024).

12.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13.      "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14.      "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15.      Moxie Corp does business under the name Moxie Pest Control.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

16.     Moxie Pest Control provides pest control services throughout the US, including in Colorado.[3]

17.     Moxie Denver is the fully owned/operated Moxie Pest Control entity that transacts business in Colorado.[4]

18.     The Defendants both place calls and send text messages to consumers to solicit pest control business to current and former clients.

19.     This includes calls and text messages that are being placed to consumers who specifically told the Defendants to stop contacting them.

20.     As a result of the above, the Defendants are also placing calls and sending text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

21.     Consumers have posted complaints online about solicitations that they received from the Defendants and other Moxie Corp entities after cancelling their services or asking for the calls to stop, including:

- "…In the meantime I get calls/text for free termite inspection and then attic inspection. ***Requested them to stop calling but they didn't***. Enough was enough called and cancelled service. No mention of a cancellation fee. Look at my credit card statement $676 fee."[5] (emphasis added)

- "This business is still contacting me to schedule services and refusing to close my account."[6]

- "…In late June 2024, I received a text message that said service for my yard was coming up in a couple of days. It did not say a company or provide any identification so I honestly thought it was a spam text. I had no ordered or requested any services. I haven't called, emailed, or texted any mosquito company in a few years…I would not recommend putting any card information in your profile with

---

[3] https://www.linkedin.com/company/moxie-pest-control/about/
[4] https://www.sos.state.co.us/ucc/pages/biz/bizSearch.xhtml
[5] https://www.facebook.com/groups/858292631737558/search/?q=do%20not%20call
[6] https://www.bbb.org/us/tx/irving/profile/pest-control/moxie-pest-control-lp-0875-90463250/complaints?page=15

4

this company because they will just do a treatment unannounced (after 3 years of no contact!) and use the card on file to collect a payment."[7] (emphasis added)

22.    In response to these calls, Plaintiff Ferrari brings forward this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF FERRARI'S ALLEGATIONS

23.    Plaintiff Ferrari is the sole owner and user of her cell phone number ending in 0262.

24.    Plaintiff Ferrari registered her cell phone number on the DNC on December 22, 2023.

25.    Plaintiff Ferrari uses her residential phone number for personal use only. It is not associated with a business.

26.    Plaintiff Ferrari uses her cell phone number primarily for communicating with friends and family, and to schedule appointments.

27.    Plaintiff Ferrari's cell phone number is paid for in full by Plaintiff. It is not reimbursed or paid for by a business.

28.    When Plaintiff Ferrari resided in Colorado, her landlord used Moxie Denver to service the tenants' properties.

29.    Plaintiff Ferrari's prior landlord provided Plaintiff's phone number to Moxie Denver to facilitate the pest control on the Plaintiff's premises.

30.    Plaintiff Ferrari never did business directly with Moxie Corp, Moxie Denver, or any of its entities.

---

[7] https://www.bbb.org/us/tx/irving/profile/pest-control/moxie-pest-control-lp-0875-90463250/complaints?page=3

31.     Plaintiff Ferrari never signed anything with Moxie Corp, Moxie Denver, or any of its entities.

32.     Plaintiff Ferrari moved away from Colorado approximately 2 years ago.

33.     Despite moving, Plaintiff Ferrari continued to receive calls and text messages from the Defendants, addressed to or asking for Gregg, her previous landlord.

34.     Plaintiff Ferrari had specifically told Moxie Denver that it was calling the wrong number in previous calls and she asked for the calls to stop.

35.     Plaintiff Ferrari told the callers that she is not Gregg and that she does not reside in Colorado.

36.     Plaintiff Ferrari has continued to receive calls and text messages from both of the Defendants that are intended for Gregg to her cell phone number.

37.     On March 21, 2023 at 7:49 AM, Plaintiff Ferrari received an unsolicited text to her cell phone from 720-583-9738:



38.    As per the screenshot, the text message clearly states that it is from Moxie Pest Control with a contact phone number of 720-428-2056.

39.    720-428-2056 is the main contact number for Defendant Moxie Denver:



40.     This text message is a solicitation because Moxie Corp and its associated entities

charge for quarterly service visits:

**Initial Complaint**
07/11/2023

**Complaint Type:** Service or Repair Issues
**Status:** Resolved

I have been a long-time customer of *********************** Pest ***********************.
*********************** pest *********************** gave us a one day notice of service by email on
6/27/2023 and when they showed up the next day we hadnt yet read the email were not
prepared to have them enter our house. They only treated the outside. Since they've arrived
with minimal notice on multiple occasions without providing reasonable time to prepare for
their visits I called to cancel my account. They said I was covered through the end of the
quarter. I told them I would like to be covered through the end of the quarter so that I could
have them complete the service to which I was entitled and then to cancel the account. The
agent insinuated that if I did that, I might be charged for another quarterly treatment. Since
she had essentially threatened me, I was so mortified that I just went ahead and canceled
the account. I would like the full $159 refunded to me that they charged me yesterday since
they provided me with partial treatment without offering the contractual 90 day warranty
with the option of canceling it automatically at the end of that period. I considered todays
interaction to be coercive not to mention insulting.

41.     On March 22, 2023 at 10:20 AM, Plaintiff Ferrari received an unsolicited text

message to her cell phone from 818-939-6349:

---

[8] https://www.moxieservices.com/locations/denver/
[9] https://www.bbb.org/us/tx/irving/profile/pest-control/moxie-pest-control-lp-0875-90463250/complaints?page=15



42.    On March 22, 2023 at 10:49 AM, Plaintiff Ferrari received another unsolicited text message to her cell phone from 817-813-9004:



43.    This text was sent by or on behalf of Defendant Moxie Corp, as evidenced by the use of area code 817, which is a Dallas, Texas area code. The head office for Moxie Corp is in Irving, Texas.

44.     On April 4, 2023 at 2:05 PM, Plaintiff Ferrari received another unsolicited text message to her cell phone from 301-945-8984:



45.     On April 26, 2023 at 1:46 PM, Plaintiff Ferrari received an unsolicited call to her cell phone from 720-721-3081.

46.     This call was not answered.

47.     When 720-721-3081 is called, an automated system identifies the company name Moxie Pest Control.[10]

48.     On May 16, 2023 at 10:10 AM, Plaintiff Ferrari received 2 unsolicited text messages to her cell phone from 720-776-1457:

---

[10] Based on an investigation conducted by Plaintiff's attorneys



49.     Although the above text messages reference an allegedly complimentary termite inspection, the inspections are conducted for the Defendants to sell additional services, as per the following complaints that were posted by other consumers:



**Dawn Ovel**
May 16, 2023 · 🌐

I have a negative, positive and bonus to share.

Negative- I agreed to free termite inspection last week. The person who came out yesterday lead me to believe I have termites "in" my home. $3400, 24 hr price (price goes up afterwards), nothing in writing unless I agreed to pay.

Positive: I didn't sign up because I wanted a second opinion. A different pest company came out today and the interior of my home is termite free.

Bonus- The county I live in requires a sales permit if you are trying to sell a product door to door. Moxie does not have a sales permit. A deputy in my county received notice that Moxie was in the neighborhood, tracked all the salesmen down and put a stop to it. [11]

---

[11] https://www.facebook.com/groups/858292631737558/search/?q=do%20not%20call

 **Garrett Scott**
November 18, 2023 · 🌐

My fiancé and I had a Moxie gentleman come by for a free termite inspection... so he goes and does his inspection and finds a dead piece of wood from our backyard fence (which is old to begin with) and points out 2 termites.... he goes on to explain that a colony can grow to the size of a basketball court if not treated immediately... I think nothing of this since I have zero idea about termites (first time homeowner)

We get a $2.7k quote from him the same day of this inspection... here is the kicker... he mentions that the state of Texas (which is where I live) has a Termite Grant Program, in the range of $450, that we will automatically get approved for if we give the "go ahead" within the next 24 hrs... we are told if we do not approve the treatment by the 24th hour, we can't have this $450 grant applied to our original $2.7k quoted price                    12

**Initial Complaint**                    **Complaint Type:** Service or Repair Issues
07/17/2023                               **Status:** Answered ✅

First of all, I did not know I was signing a contact when the salesman ignored my NO SOLICITING sign on my door. Nor was I made aware the price would increase after the first treatment.They called and offered a free termite inspection. Being recently widowed I said sure. The guy came out and said I have active termites and showed me some blurry videos (that Ive asked for and still dont have). He sold me a system thats guaranteed to get rid of the termites and it was installed the next day. I began to question it and spoke to a friend in pest control who recommended I get more opinions. I had 2 other companies come out who BOTH said that not only do I NOT have termites, but the system sold to me is a PREVENTATIVE system and it was installed improperly so my house is NOT protected should it get attacked. Upon more research, the paperwork for this sentricon system states that I am responsible for additional treatments should it fail, but according to both companies they shouldnt charge for that because sentricon will pay them to treat my house - so theyre double dipping.Now I cant get calls returned or emails responded to. I feel 100% preyed on and taken advantage of as a young and stressed widow. They saw an easy way to make money with lies and tricking me into contracts. Now Im stuck with a useless waste of $2K in my yard, a pest control company I want nothing to do with because I dont trust them, and loss of funds I dont really have. I dont understand how they have a BBB A rating - this company is TERRIBLE and just takes advantage of people and lies.                    13

    50.    On June 7, 2023 at 12:20 PM, Plaintiff Ferrari received an unsolicited text message to her cell phone from 217-919-9530:

---

[12] https://www.facebook.com/groups/858292631737558/search/?q=do%20not%20call
[13] https://www.bbb.org/us/tx/irving/profile/pest-control/moxie-pest-control-lp-0875-90463250/complaints?page=15



51.    On July 13, 2023 at 10:55 AM, Plaintiff Ferrari received an unsolicited text message to her cell phone from 720-776-1457:



52.     Also on July 13, 2023 at 10:55 AM, Plaintiff Ferrari received an unsolicited call to her cell phone from 720-721-3081.

53.     This call was not answered.

54.     On August 7, 2023 at 3:57 PM, Plaintiff Ferrari received an unsolicited text message to her cell phone from 217-919-9530:



55.     On December 4, 2023 at 9:08 AM and again at 9:09 AM, Plaintiff Ferrari received 2 back-to-back calls to her cell phone from 720-721-3081.

56.     These calls were not answered.

57.     On August 1, 2024 at 12:59 PM, Plaintiff Ferrari received an unsolicited text message to her cell phone from 817-345-6347:



58.    This text message, which was sent from a Texas area code, is a solicitation for mosquito control treatments.

59.    Based on the area code that was used, this solicitation was sent by Moxie Corp directly to Plaintiff's cell phone.

60.    Plaintiff received a 2nd unsolicited text message on August 1, 2024 to her cell phone at 3:08 PM, also from 817-345-6347.

61.    In response to this text message, on August 1, 2024 at 3:29 PM, Plaintiff texted "I'm not Gregg. Please take my number off your list":



62.     Despite this stop request, Plaintiff Ferrari received another unsolicited call to her cell phone on August 13, 2024 at 8:32 AM from 720-721-3081.

63.     This call was not answered.

64.     On August 13, 2024 at 8:33 AM, Plaintiff Ferrari received an unsolicited text message to her cell phone from 720-776-1457.

65.     In response to the text, on August 13, 2024 at 8:56 AM, Plaintiff texted, "Not Gregg. Remove this number from your list" to 720-776-1457.

66.     Plaintiff received an immediate response at 8:56 AM on August 13, 2024 stating, "i have updated this":



67.    Despite this additional stop request, Plaintiff Ferrari received 3 more unsolicited calls from 720-721-3081 to her cell phone on August 21, 2024 at 2:33 PM, on August 27, 2024 at 12:43 PM and on September 12, 2024 at 1:50 PM.

68.    The unauthorized solicitation telephone calls and text messages that Plaintiff received from or on behalf of the Defendants have harmed Plaintiff Ferrari in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

69.    The calls and text messages that Plaintiff Ferrari received from the Defendants were especially troublesome because she works a night shift and the calls/texts interrupted her sleep.

70.    Seeking redress for these injuries, Plaintiff Ferrari, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

71.    Plaintiff Ferrari brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) The Defendants called and/or texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendants called/texted Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Moxie Denver called and/or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Moxie Denver called Plaintiff, (4) including at least once after the person requested that they stop calling.

72.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) the Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Ferrari anticipates the need to amend the Class definition following appropriate discovery.

73.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

74.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether the Defendants placed multiple calls and/or text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)     whether Moxie Denver engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether members of the Classes are entitled to treble damages based on the wilfulness of Defendants' conduct.

75.     **Adequate Representation**: Plaintiff Ferrari will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Ferrari has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff Ferrari and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Ferrari nor her counsel have any interest adverse to the Classes.

76.     **Appropriateness**: This class action is also appropriate for certification because the Defendants acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Ferrari. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants'

actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act
(Violation of 47 U.S.C. § 227)
(On Behalf of Plaintiff Ferrari and the Do Not Call Registry Class)**

77.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

78.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

79.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

80.     The Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Ferrari and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

81.     The Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Ferrari and the Do Not Call Registry Class received more than one telephone call and/or text message in a 12-month

period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

82.    As a result of Defendants' conduct as alleged herein, Plaintiff Ferrari and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Ferrari and the Internal Do Not Call Class)**

84.    Plaintiff repeats and realleges paragraphs 1-76 of this Complaint and incorporates them by reference herein.

85.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the

request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

86.     Moxie Denvrer placed calls and/or text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendants to initiate telemarketing calls/texts.

87.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

88.     Moxie Denver has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant Moxie Denver's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)   An award of money damages and costs;

c)   An order declaring that Defendants' actions, as set out above, violate the TCPA;

d)   An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ferrari requests a jury trial.

> **CHRISTINA FERRARI**, individually and on behalf of all others similarly situated,

DATED this 23rd day of September, 2024.

By: /s/ Avi *R. Kaufman*
Avi R. Kaufman
Kaufman P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
(305) 469-5881
Email: kaufman@kaufmanpa.com

*Attorney for Plaintiff and the putative Classes*